**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND
SOUTHERN DIVISION**

| | | |
|---|---|---|
| SHARON WHITE, | * | |
| | * | |
| *Pro Se* Plaintiff | * | |
| | * | |
| v. | * | Civil Action No. AW-07-0762 |
| | * | |
| MORTGAGE DYNAMICS, INC., | * | |
| | * | |
| Defendant. | * | |
| | * | |

\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*

<u>**MEMORANDUM OPINION**</u>

Plaintiff Sharon White ("White" or "Plaintiff") has filed this employment discrimination suit against her former employer, Defendant Mortgage Dynamics, Inc. ("MDI" or "Defendant"), alleging that she was terminated in violation of Title VII of the Civil Rights Act of 1964, 42 U.S.C. §§ 2000e, *et seq*. ("Title VII") and the Age Discrimination in Employment Act of 1967 as amended, 29 U.S.C. §§ 621, *et seq.* ("ADEA").  Currently pending before the Court is Defendant MDI's Motion to Dismiss Plaintiff's Complaint (Docket No. 12).  Plaintiff has not responded to the instant motion, and the time for Plaintiff's opposition response has expired, thus making the motion ripe for review. The Court has reviewed the entire record as well as the pleadings with respect to this motion and finds that no hearing is deemed necessary. *See* Local Rule 105.6 (D. Md. 2004).  For the reasons stated more fully below, the Court will DENY Defendant's Motion to Dismiss.

**FACTUAL AND PROCEDURAL BACKGROUND**

Plaintiff, a forty-eight-year-old African-American woman, brings this suit against Defendant, alleging that she was wrongly terminated from her employment because of her race, gender, and age in violation of Title VII and ADEA.  Plaintiff was hired by Defendant on September 13, 2004, as

1

a loan compliance auditor based on her experience, expertise, and background in the mortgage industry. Defendant had recently acquired a new project and was looking to hire additional employees at their Upper Marlboro, Maryland, MDI office. According to Defendant, when new auditors are hired, Defendant makes clear to them that their efficiency and accuracy on work assignments would be closely monitored by company management, as work assignments are based on performance.

As the weeks progressed, the specific project that Plaintiff was assigned was experiencing a decline in the number of loans being processed, which therefore required fewer people to complete the work. On several occasions, Plaintiff states that she was told not to come into the office because there was not enough work to do, only to discover later that the work did actually arrive and that she was the only person not allowed to return back to work. According to Plaintiff, there were many other employees – younger, white males – whom Plaintiff alleges were hired after her and with less experience who were still allowed to continue working. Plaintiff maintains that she was fired from her job, not because of a lack of work, as told to her by her supervisor, but because of her race, gender, and age. Defendant, on the other hand, contends that Plaintiff was laid off due to her low performance in her project group, and as a temporary employee who was the last person hired on the project, it was appropriate to terminate her when the project volume dropped as opposed to a more senior employee.

Plaintiff was thereby terminated from her employment with Defendant on December 31, 2004. Plaintiff initiated her claim with the Equal Opportunity Employment Office ("EEOC") on February 12, 2005. Plaintiff was then given a charge number and her information was subsequently entered into their Charge Management System. Plaintiff completed a "Charge Information

2

Questionnaire," a "Discipline Questionnaire," and a "Witness Questionnaire," and attached a brief statement of the alleged incidents leading up to her final termination from MDI.

On April 25, 2006, a "Charge of Discrimination" was filed with the EEOC, and Defendants were subsequently notified of Plaintiff's Complaint through a letter from the Baltimore EEOC Office on May 9, 2006.  On December 26, 2006, the EEOC sent Plaintiff a dismissal of her charge and a notice of her right to sue.  Plaintiff filed the instant suit in this Court on March 26, 2007, to which Defendant later responded by filing the pending Motion to Dismiss.

## STANDARD OF REVIEW

A court must deny a motion to dismiss under Rule 12(b)(6) of the Federal Rules of Civil Procedure "unless it appears beyond doubt that the plaintiff can prove no set of facts in support of its claim which would entitle it to relief."  *See Conley v. Gibson*, 355 U.S. 41, 45-46 (1957).  In determining whether to dismiss a complaint pursuant to Rule 12(b)(6), this Court must view the well-pleaded material allegations in the light most favorable to the plaintiff and accept the factual allegations contained within the plaintiff's complaint as true.  *See Flood v. New Hanover County*, 125 F.3d 249, 251 (4th Cir. 1997) (*citing Estate Constr. Co. v. Miller & Smith Holding Co., Inc.*, 14 F.3d 213, 217-18 (4th Cir. 1994)).

The Court, however, is "not bound to accept as true a legal conclusion couched as a factual allegation."  *See Papasan v. Allain*, 478 U.S. 265, 286 (1986) (citing *Briscoe v. LaHue*, 663 F.2d 713, 723 (7th Cir. 1981)); *Young v. City of Mount Ranier*, 238 F.3d 576, 577 (4th Cir. 2001) (the mere "presence ... of a few conclusory legal terms does not insulate a complaint from dismissal under Rule 12(b)(6)").  Nor is the Court "bound to accept [Plaintiff's] conclusory allegations

regarding the legal effect of the facts alleged." *United Mine Workers of Am. v. Wellmore Coal Corp.*, 609 F.2d 1083, 1085-86 (4th Cir. 1994); *Neitzke v. Williams*, 490 U.S. 319, 326-27 (1989).

It is important to keep in mind that a dismissal under Rule 12(b)(6) is a harsh remedy which should be "cautiously studied, not only to effectuate the spirit of the liberal rules of pleading, but also to protect the interests of justice." *Duran v. Carris*, 238 F.3e 1268, 1270 (10th Cir. 2001). Therefore, a complaint may be dismissed as a matter of law only if it lacks a cognizable legal theory *or* if it alleges insufficient facts to support a cognizable legal theory. *See Robertson v. Dean Witter Reynolds, Inc.*, 749 F.2d 530, 533-34 (9th Cir. 1984) (citing 2A J. Moore, Moore's Federal Practice ¶ 12.08 at 2271 (2d ed. 1982)).

Additionally, Fed. R. Civ. Pro. 12(b) provides that when "matters outside the pleadings are presented to and not excluded by the court, the motion shall be treated as one for summary judgment and disposed of as provided in Rule 56, and all parties shall be given reasonable opportunity to present all material made pertinent to such a motion by Rule 56." Fed. R. Civ. Pro. 12; *see Talbot v. U.S. Foodservice, Inc.,* 191 F. Supp. 2d 637, 639 (D. Md. 2002) (treating motion to dismiss as motion for summary judgment where the Court had to consider "two items of evidence extrinsic to the pleadings").

However, an exception to the general rule is made for documents which are referred to in the Complaint and upon which Plaintiff relies in bringing the action. *Biospherics, Inc. v. Forbes, Inc.*, 989 F.Supp. 748, 750 (D. Md. 1997); *see Cortec Industries, Inc. v. Sum Holding, L.P.,* 949 F.2d 42, 46-48 (2d Cir.1991) *cert. denied,* 503 U.S. 960, 112 S.Ct. 1561, 118 L.Ed.2d 208 (1992). That exception has been recognized with favor and relied upon in this Circuit and District. *See New Beckley Min. Corp. v. International Union, United Mine Workers of America,* 18 F.3d 1161, 1164

(4th Cir.1994); *In re Medimmune, Inc. Securities Litigation,* 873 F.Supp. 953, 957 (D. Md.1995).

Here, Defendant has appended to its Motion, and Plaintiff has incorporated by reference, the Charge

of Discrimination, and that document was not included in the attachments to Plaintiff's Complaint.

As this document is integral to the Complaint and since Plaintiff has expressed no objection, the

Court will consider this document in ruling on the Motion to Dismiss, thus not converting it to a

Motion for Summary Judgment.[1]

## ANALYSIS

Defendant's primary argument in dismissing Plaintiff's Complaint is that Plaintiff filed the

EEOC charge after the 300-day statutory deadline.  Defendant maintains that Plaintiff filed the

Charge of Discrimination on April 25, 2006, which was more than 480 days after her termination

from MDI.  Because of the untimely filing of her charge, Defendant contends that Plaintiff's

Complaint should be dismissed since it is outside the mandated statutory time period.

It is undisputed that Plaintiff's Charge of Discrimination is dated April 25, 2006, which far

exceeds the 300-day period with which Plaintiff had to file her discrimination complaint with the

EEOC.  The alleged discriminatory act – Plaintiff's termination – took place on December 31, 2004,

and Plaintiff had until October 28, 2005, to file her charge.

Here, the Court must resolve whether Plaintiff has properly stated a claim upon which relief

may be granted, in light of Plaintiff's alleged failure to exhaust the administrative remedies within

the statutory period.  Specifically, the Court must decide, in the particular circumstances of this case,

whether the intake documents filed by Plaintiff within the statutory period constitute an

administrative "charge," thus satisfying the requirements under the statute.

---

[1] Furthermore, the procedural question is also not intertwined with a Motion for Summary Judgment, thus further preventing the need to translate the instant Motion into one for summary judgment.

An employee wishing to bring suit under Title VII and/or the ADEA to protest a wrongful employment practice must first "file" a "charge" of discrimination. 42 U.S.C. §2000e-5(e)(1). Section 706(e)(1) provides that "[a] charge … shall be filed within one hundred and eighty days [and in some cases 300 days] after the alleged unlawful employment practice occurred." *Id.* Since Maryland is a "deferral state,"[2] the applicable time period for filing a charge is extended to 300 days. *Lane v. Wal-Mart Stores E.*, 69 F.Supp.2d 749, 752 (D. Md. 1999). If an employee does not submit a timely EEOC charge, then he or she may not proceed to court. 42 U.S.C. 2000e-5(f)(1).

It should also be noted that nowhere in the EEOC regulations, Title VII, or the ADEA is a "charge" ever defined. *Edelman v. Lynchburg College*, 535 U.S. 106, 112 (2002). Title VII states that a "charge" of discrimination "shall be in writing under oath or affirmation and shall contain such information and be in such form as the [EEOC] requires." 42 U.S.C. § 2000e-5(b). Similarly, the EEOC regulations indicate that a charge "shall be in writing and signed and shall be verified."[3] 29 C.F.R. § 1601.9. The regulations further suggest that a charge should include:

> (1) the full name, address, and telephone number of the complainant;
> (2) the full name and address of the person against whom the charge is made, if known;
> (3) a clear and concise statement of the facts, including pertinent dates, constituting the alleged unlawful employment practices;
> (4) the approximate number of employees of the employer, if known; and
> (5) a statement disclosing whether proceedings involving the alleged unlawful employment practice have been commenced before a State or local agency charged with the enforcement of fair employment practice

---

[2] A *deferral state*, such as Maryland, is one with "a State or local agency with authority to grant or seek relief from such practice or to institute criminal proceedings with respect thereto upon receiving notice thereof." 42 U.S.C. § 2000*e*-5(e)(1); 29 U.S.C. § 626(d)(2).

[3] A *verified* charge is one that is "shown to or affirmed before a notary public, designated representative of the Commission, or other person duly authorized by law to administer oaths and take acknowledgments, or supported by an unsworn declaration in writing under penalty of perjury." 29 C.F.R. § 1601.3 (2006).

laws, and, if so, the date of such commencement and the name of the agency.

29 C.F.R. § 1601.12(a).  Even if the above criteria is not referenced in a charge, the EEOC will still deem a "charge" nonetheless sufficient when it receives from the charging party "a written statement sufficiently precise to identify the parties, and to describe generally the action or practices complained of." 29 C.F.R. § 1601.12(b).

In this case, Plaintiff has submitted documents with her complaint that shows that she began the process of filing a charge on February 12, 2005, which is within the 300-day statutory time period.  The Court believes these documents – the Intake Questionnaire, Discharge Questionnaire, Witness Questionnaire, the attached statement, and correspondence records from the EEOC[4] – do satisfy the EEOC's minimum requirements for a "charge" under the statute.  These written intake materials were "sufficiently precise to identify the parties and describe generally the action or practices" about which Plaintiff complained.  First, these documents included information detailing the Plaintiff's full name, address, telephone number, birth date, and social security number, as well as Defendant's name, address, and telephone number.  Second, a short statement detailing the facts leading up to the alleged incident was attached to the questionnaire forms.  Lastly, all these documents were signed and verified.[5]  As a result, the Court finds that these documents are sufficient to satisfy the requirements of filing a charge of discrimination within 300 days of the alleged act of discrimination, and as set forth in the EEOC regulations in 29 C.F.R. § 1601.12.

Although these documents may not constitute a formal "charge" by themselves, other courts have held that these documents would be sufficient enough to constitute a "charge," thus allowing

---

[4] This correspondence from the EEOC was supplemented by Plaintiff pursuant to the Court's Order of November, 27, 2007, Docket No. 21.

[5] Plaintiff signed the Charge Information Questionnaire and the Discipline Questionnaire "under penalty of perjury."

a plaintiff's claims to continue without being jurisdictionally time-barred if the otherwise formal

"Charge of Discrimination" was thus filed outside the statutory period.  In considering the question

of intake questionnaires, some circuits have imposed an additional requirement – the "manifest

intent" rule – not explicitly stated in the statute or the regulations when finding an intake

questionnaire as constituting a "charge."  *Montes v. Vail Clinic Inc.*, 497 F.3d 1160, 1164-65 (10th

Cir. 2007) (noting that most circuits apply some variation of the "manifestation of intent" test);

*Holowecki v. Fed. Express Corp.*, 440 F.3d 558, 566 (2d Cir. 2006).  These courts have held that for

a written submission to constitute a "charge," it "must manifest an individual's intent to have the

agency initiate its investigatory and conciliatory processes." *Holowecki*, 440 F.3d at 566; *see also*

*Wilkerson v. Grinnell Corp.*, 270 F.3d 1314, 1319-20 (11th Cir. 2001) (applying the "manifestation

of intent" test and concurring with other circuit court rulings that the intake questionnaire may serve

as a charge of discrimination if the facts of the case demonstrate that the complainant manifested

an intent to activate the administrative process); *Diez v. Minn. Mining & Mfg. Co.*, 88 F.3d 672, 676-

77 (8th Cir. 1996) (ADEA context); *Steffen v. Meridian Life Ins. Co.*, 859 F.2d 534, 542 (7th Cir.

1988); *Bihler v. Singer Co.*, 710 F.2d 96, 99 (3d Cir. 1983).

Similarly, the Tenth Circuit has recently held that an intake questionnaire may qualify as a

charge if (1) the questionnaire satisfies the EEOC's minimum requirements for a charge; (2) the

plaintiff intended to activate the "administrative machinery" as indicated by the circumstances of

the case; and (3) the EEOC ultimately treated the questionnaire as a charge. *Jones v. United Parcel*

*Service, Inc.*, 502 F.3d 1176, 1183 (10th Cir. 2007).  While the Fourth Circuit has not explicitly

adopted the "manifest intent" rule, it has held that a letter filed with the EEOC relating claims of

discrimination constituted a "charge" under Title VII because it met the EEOC's charge-content

regulations, and the aggrieved party subjectively believed it to be a charge, even though the EEOC did not. *Edleman v. Lynchburg Coll.*, 300 F.3d 400, 404-05 (4th Cir. 2002).  The Sixth Circuit, on the other hand, seems to reject this basic approach.  In the ADEA context, the Sixth Circuit has held that the statute requires "a formal charge, not an inquiry or complaint" since the questionnaire in that case did not purport to be a formal charge. *Dorn v. General Motors Corp.*, 131 Fed. Appx. 462, 470 n. 7 (6th Cir. 2005) (unpublished).[6]

In using the "manifest intent" rule as a basis for its decision, this Court concludes that the intake questionnaire can be properly construed as a charge under the regulations.  First, this Court has already determined that the intake questionnaire documents satisfied the requirements of the charge-content regulation in 29 C.F.R. §1601.12.   Second, evidence demonstrates that Plaintiff intended the intake materials to serve as a charge, as shown by the content of the questionnaire. *Holowecki*, 440 F.3d at 568.  In the attached statement, Plaintiff stated that she is "looking for EEOC to work with me and support [me] in filing this charge against MDI."   Also, in the intake questionnaire, Plaintiff checked the box entitled, "I want to file a charge," expressing a desire to move the investigatory process forward.   Lastly, Plaintiff did begin pursuing her claims and initiating the process with the EEOC in February 2005, shortly after her termination in December 2004.  Taking the facts and evidence in a light favorable to Plaintiff, it can be shown that Plaintiff manifested an intent to activate the administrative process.

---

[6] Because of the apparent conflicting positions of the circuit courts and the uncertainty surrounding intake questionnaires, the Supreme Court has recently granted certiorari to resolve the circuit split on the status of intake questionnaires.  The Court will determine when and under what circumstances an EEOC intake questionnaire may serve as a Charge of Discrimination, even when the EEOC does not treat the questionnaire as a charge and the employee does not reasonably believe it constitutes a charge. *Holowecki v. Fed. Express Corp.*, 440 F.3d 558 (2d Cir. 2006), *cert. granted, -- U.S. --, 127 S.Ct. 2914 (2007).*  Although that case is under the ADEA, the statutory regime is very similar to that of Title VII and will shed some light on the issue, given that the filing requirements of the ADEA are *in haec verba* to that of Title VII. *See E.E.O.C. v. Commercial Office Prods.*, 486 U.S. 107, 123-124 (1988).

While the EEOC's treatment of the questionnaire is relevant, it is not necessarily conclusive. *See Wilkerson*, 270 F.3d at 1321; *Downes v. Volkswagen of Am., Inc.,* 41 F.3d 1132, 1139 (7th Cir.1994); *Steffen,* 859 F.2d at 544.  The record does not reveal any direct correspondence from the EEOC explicitly stating their position on the intake questionnaire.  They did, however, issue a charge number to Plaintiff and input her information in the Charge Management System, and later issued a letter of dismissal and notice of right to sue.  Also, in the dismissal and right to sue letter, the EEOC did not check the box indicating that the "charge was not filed within the time limit as required by law;" instead, they declined to bring suit on Plaintiff's behalf based on their investigatory findings.  This, without more,  is not conclusive of the EEOC's treatment of the charge, but again, taking the facts and evidence in a light favorable to the Plaintiff, it is an indication that the EEOC still proceeded to investigate Plaintiff's complaint, and thus, could have treated the questionnaire as a charge.[7]  *Jones*, 502 F.3d at 1185 (concluding that the EEOC's issuance of a dismissal and notice of right to sue letter demonstrates that the EEOC ultimately treated the intake materials as a formal charge); *see also Wilkerson*, 270 F.3d at 1321 (holding that the "EEOC's ultimate response, combined with the other relevant facts, would convince a reasonable person that [plaintiff] manifested her intent to activate the administrative machinery.").[8]

The Court concludes that although the Charge of Discrimination was filed outside the statutory period, the intake questionnaire and other supporting documents, which included the basic information as required by 29 C.F.R. § 1601.12, does constitute a "charge" for purposes of Title VII

---

[7] The Court notes that the language located at the top of the Questionnaire forms reminding complainants that a charge of discrimination should be filed within the time limits imposed by law does not impact the analysis. *See also Barley v. Wal-Mart Assoc., Inc.*, No. 07-CV-0240, 2007 WL 2900538, at *5 n. 5 (N.D. Okla. Oct. 3, 2007).

[8] The Court is unable to determine exactly the reason for the delay in the processing of Plaintiff's complaint between February 12, 2005, when the process was initiated, and April 25, 2006, when the Charge of Discrimination was filed with the EEOC.  In the absence of that information, the Court is unwilling to summarily dismiss Plaintiff's complaint at this stage.

and the ADEA because its content satisfied the statutory and regulatory requirements for what information must be included in a charge.  Also, Plaintiff manifested her intent to initiate the administrative process by filing her materials with the EEOC within 300 days of the alleged unlawful termination.

The Court also finds that this decision is consistent with the spirit of Title VII and the ADEA.  Both laws are remedial legislation which must be construed liberally. *Puryear v. County of Roanoke*, 214 F.3d 514, 522 (4th Cir. 2000); *Philbin v. General Elec. Capital Auto Lease, Inc.*, 929 F.2d 321, 323 (7th Cir. 1991); *Peterson v. City of Wichita, Kansas*, 888 F.2d 1307, 1309 (10th Cir. 1989).  In accordance with this principle, courts should avoid "hypertechnical" interpretations of its procedural provisions which would defeat those remedial purposes and prevent plaintiffs with meritorious claims from moving forward. *Casavantes v. California State University, Sacramento*, 732 F.2d 1441, 1442 (9th Cir.1984).  Moreover, granting a motion to dismiss is a harsh remedy which should only be allowed in certain circumstances.  The Court, in this instance, will give Plaintiff the opportunity to litigate the merits of her case and will preclude dismissal based on a technicality.

Finally, the Court also notes that this ruling is not based specifically on the merits of Plaintiff's complaint, but solely on the procedural and technical aspects of the law.  Moreover, Defendant has not advanced any substantive claims going to the merits of Plaintiff's complaint in their Motion to Dismiss.[9]

---

[9] The Court strongly admonishes Plaintiff of the difficulty in pursuing this case without counsel and urges her to retain counsel as soon as possible so that she can adequately articulate her claims and litigate her case.  Otherwise, Plaintiff may face challenging discovery requirements and may have difficulty meeting her burden in a potential summary judgment motion.

**CONCLUSION**

For the reasons set forth above, the Court will DENY Defendant MDI's Motion to Dismiss.

An Order consistent with this Memorandum Opinion will be filed separately.


December 20, 2007                                                   /s/
Date                                                    Alexander Williams, Jr.
                                                        United States District Judge